| | | |
|---|---|---|
| CATHERINE McALPINE-EIG | * | IN THE |
| 315 Baltimore Road | | |
| Rockville, Maryland 20850 | * | UNITED STATES DISTRICT COURT |
| | | |
| Plaintiff, | * | FOR THE |
| | | |
| v. | * | DISTRICT OF MARYLAND |
| | | |
| MONTGOMERY COUNTY DEP'T | * | |
| OF HEALTH AND HUMAN SERVS. | | |
| 101 Monroe Street | * | |
| Rockville, Maryland 20850 | | |
| | * | |
| Serve on: | | |
| Marc Elrich | * | |
| County Executive | | |
| Montgomery County Government | * | |
| 101 Monroe Street, 2nd Floor | | Case No.: 8:19-cv-02536 |
| Rockville, Maryland 20850 | * | |
| | | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

COMES NOW, Catherine McAlpine-Eig, by and through her attorneys, Paul V. Bennett, Esq., Elizabeth A. Marcus-Wenger, Esq., and Bennett & Ellison, P.C., and hereby sues Montgomery County Department of Health and Human Services and in support thereof states:

## JURISDICTION AND VENUE

1.      This court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. (hereinafter referred to as "Title VII").

2.      This court has jurisdiction pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq.

3.      This court has jurisdiction pursuant to Family and Medical Leave Act (hereinafter referred to as "FMLA"), 29 U.S.C. §§ 2615 et seq.

1

4.      This court has jurisdiction pursuant to Md. Code Ann., State Government Article § 20-606.

5.      That all actions complained of herein took place in Montgomery County, Maryland.

6.      Defendant, Montgomery County Department of Health and Human Services, is located in Montgomery County, Maryland.

7.      That at all times relevant hereto, Defendant Montgomery County Department of Health and Human Services, was a government agency employing fifteen (15) or more persons, and is an "employer" within the meaning of Title VII, 42 U.S.C. §§ 2000e, et seq.; ADA, 42 U.S.C. §§ 12101, et seq.; FMLA, 29 U.S.C. §§ 2615 et seq.; and Md. Code Ann., State Government Article, § 20-601(d) (2016).

8.      In accordance with Title VII, ADA, and Md. Code Ann., State Government Article, § 20-601(d) (2016), Plaintiff timely contacted the Maryland Commission on Civil Rights on March 22, 2018 and filed a Charge of Discrimination with the Maryland Commission on Civil Rights on September 10, 2018. On June 6, 2019, a Notice of Right to Sue was issued by the U.S. Equal Employment Opportunity Commission. Therefore, Plaintiff has properly exhausted her administrative remedies before timely filing suit.

## FACTS COMMON TO ALL COUNTS

9.      Plaintiff's gender is female. At all times mentioned herein, she has suffered a disability, namely anxiety and depression.

10.     Plaintiff was hired by Montgomery County Department of Health and Human Services on or about December 23, 1985 as Social Worker, Level I.

11.     On or about May 15, 1999, Plaintiff was promoted to Manager III. This position involved supervisory responsibilities.

12.     At all relevant times, Plaintiff was employed by Defendant as a Manager III with an annual salary of $135,982.00 and employment benefits including employer provided health insurance, vacation time, sick leave, pension benefits, 401(k), life insurance, and other benefits.

13.     Further, at all times during Plaintiff's employment, Plaintiff met or exceeded her employer's legitimate expectations.

14.     On or about May 15, 2013, Plaintiff complained to Dr. Raymond Crowel (male, no known disability), Deputy Chief Manager II, and Scott Greene (male, no known disability), Deputy Chief Manager II, that she was being subjected to unfair terms and conditions of employment due to her sex. Specifically, Scott Greene, Deputy Chief Manager II, and Dr. Raymond Crowel, Chief, required Plaintiff to submit mileage reports for reimbursement in a different and protracted manner as compared to her male colleagues within her department. Larry Gamble (male, no known disability), Manager III; Eugene Morris (male, no known disability), Manager III; and Scott Greene, Deputy Chief Manager II, were not subjected to these same terms and conditions of employment. Despite her complaints, the disparate treatment persisted through at least June 2018.

15.     Effective on or about July 1, 2013, Plaintiff was involuntarily transferred from Contract Administration where Plaintiff had been responsible for the administration of a budget totaling several million dollars consisting of funds from the federal, state, and county governments. Instead, Plaintiff was placed at the Outpatient Addiction and Mental Health Services with the job title of Manager III. Plaintiff was thereafter excluded from management and administration meetings. Further, Plaintiff was thereafter micromanaged by her new

supervisor, Hardy Bennett (male, no known disability). Plaintiff also was made to endure

insubordination from those reporting to her and who prevented her from performing her job

effectively.

16.     In 2015, Plaintiff informed her employer of her disability.

17.     Subsequently, in October of 2015, Plaintiff was involuntarily transferred by Dr.

Crowel from Outpatient Addiction and Mental Health Services to a "special project" without any

supervisory responsibilities at all and her managerial duties were removed.

18.     In or about September of 2017, Plaintiff requested that her mileage

reimbursement cease being processed in a protracted and onerous process. That request was

denied despite her male counterparts and those without disabilities not having to submit

reimbursement requests according to this same process.

19.     Further, in or about September of 2017, National Recovery Month, Plaintiff was

charged with organizing events in honor of the Month and was allocated $10,000.00 for these

events. While Plaintiff was organizing these events, she received over thirty (30) reminders from

Mr. Bennett of her responsibilities and the budget.

20.     On Sunday, November 19, 2017, Plaintiff informed her supervisor, Hardy

Bennett, via email that she would not be in the office on Monday, November 20, 2017 as she was

ill. He confirmed receipt of her email and her anticipated absence due to illness.

21.     On or about November 20, 2017, Plaintiff was absent from work on sick leave

and notified her second-line supervisor, Dr. Crowel, of her illness via email. Dr. Crowel

confirmed receipt of the email later that day.

22.     On that same date, Plaintiff was supposed to have met with Dr. Crowel for an

unknown reason. However, due to the pattern of harassment that Plaintiff had experienced at the

hands of Defendant, Plaintiff had requested to have an agenda for the meeting in advance as well as the right to a representative. Her request was denied.

23.     Plaintiff had also previously requested, and been granted, leave during the latter portion of the week.

24.     On or about November 20, 2017, Kevin Wong (male, no known disability), CPA who reports to Scott Greene and a colleague of Plaintiff's, showed up at Plaintiff's residence and delivered a letter from Dr. Crowel notifying her of a third, involuntary transfer.

25.     The next day, on or about November 21, 2017, Plaintiff sent a text message to Hardy Bennett and Eugene Morris, a manager at her site, further describing her illness, which detailed that she continued to be under doctor's care.

26.     Plaintiff had previously requested, and had previously been granted leave, for November 22, 2017. The following day was Thanksgiving, an office holiday. She had also previously requested, and been granted, leave for November 24, 2017.

27.     On November 24, 2017, Plaintiff returned to her physician for further medical care and treatment.

28.     On both November 22, 2017 and November 24, 2017, Hardy Bennett asserted via emails to Plaintiff that Plaintiff was improperly absent from work. Plaintiff replied by reminding Mr. Bennett that she was on leave and also provided photos of lesions on her face that had developed as a result of her illness.

29.     Subsequently, Plaintiff sent Hardy Bennett a doctor's note on November 26, 2017 documenting her ongoing illness.

30.     The following day, November 27, 2017, Plaintiff received her first notice that she was considered absent without leave ("AWOL") from November 20, 2017 through December 2,

2017. According to Defendant's protocol, Plaintiff should have been placed on leave in accordance with the Family Medical Leave Act. However, Defendant failed to abide by its protocol and used Plaintiff's medical leave as an excuse to improperly discipline Plaintiff.

31.     On or about November 27, 2017, Plaintiff complained to Dr. Crowel regarding disparate treatment and unfair working conditions. She specifically identified that she was contacted numerous times by telephone and email while she was on medical leave. Further, she complained that she had been falsely accused of being AWOL.

32.     Plaintiff's complaints were not addressed or resolved by Dr. Crowel. In fact, Dr. Crowel told Plaintiff that if she had reported to work on November 20, 2017, she would not have been accused of being AWOL nor would she have been transferred. He made this statement to Plaintiff despite having previously approved her to be on leave that week.

33.     On or about November 29, 2017, Plaintiff was subjected to a third involuntary transfer when she was transferred from Manager III working on special projects to working in the Department of Corrections. As a result of this transfer, Plaintiff was excluded from supervisory responsibilities and continued to be excluded from participating in management meetings. Plaintiff is aware that her former duties were given to three people, namely, Rebecca Garcia (no known disability), Program Manager; Kathie Nevin (no known disability), Manager III; and Scott Greene, (male, no known disability), Manager II.

34.     On or about November 30, 2017, Dr. Crowel sent an email to Plaintiff that she would not have been accused of being AWOL had she appeared for the meeting he had scheduled with her on November 20, 2017. Dr. Crowel made this statement despite Plaintiff having notified him of her absence due to illness.

35.     At all times relevant herein, Defendant had a policy to meet with each employee annually to review their performance and goals. However, contrary to this policy, at no time from 2013 through 2017 did Plaintiff have a formal, performance review discussion with her supervisor, Hardy Bennett, or Dr. Crowel. During this same time period, Plaintiff repeatedly complained that she was being treated differently as her counter-parts did not receive the same treatment and that Defendant failed to follow its policies and procedures as to performance appraisals and management. Further, upon information and belief, Plaintiff's 2017 end-of-year review was amended in a negative way by Dr. Crowel after she reviewed and signed it.

36.     On or about June 7, 2018, Plaintiff was suspended without pay under the guise of a pending investigation into alleged mismanagement and misuse of grant funds. Neither Mr. Morris nor Mr. Greene were subjected to similar treatment when they violated the employee conduct rules governing contract management and operations. The administrative leave without pay for Plaintiff was converted to administrative leave with pay in December of 2018. However, Plaintiff did not receive back pay for the first 90-days of her administrative leave.

37.     Eugene Morris (male, no known disability), Manager III, and Leon Suskin (male, no known disability), Supervisory Therapist, were not subjected to any discriminatory or retaliatory actions. Mr. Morris and Mr. Suskin are similarly situated as they performed similar duties to Plaintiff under the supervision of Dr. Crowel.

38.     Eugene Morris was hired in or about August of 1990 and became a Manager III in 2005. As of 2016, he earned approximately $134,000.00. With less years of employment with Defendant or as a Manager III, he was earning more than Plaintiff as of 2016.

39.     Larry Gamble was hired in or about February of 2004 and became a Manager III in 2003. As of 2016, he earned approximately $135,000.00. With less years of employment with Defendant or as a Manager III, he was earning more than Plaintiff as of 2016.

**COUNT I**
**GENDER DISCRIMINATION**
**(Disparate Treatment)**
**Title VII of the Civil Rights Act of 1964**
**42 U.S.C. §§ 2000e et seq.**

40.     Plaintiff hereby restates and incorporates Paragraphs 1 through 39 of this Complaint as though fully set forth herein.

41.     That Defendant carried out the aforementioned acts of discrimination against Plaintiff based on her gender (female) – a protected class under Title VII.

42.     That the aforementioned acts constitute unlawful practices pursuant to Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e et seq.

43.     That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her gender (female).

44.     That the unlawful employment practices complained of above were intentional.

45.     That the discriminatory actions as set forth above, have cause and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation, and mental anguish.

46.     That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or reckless indifference to Plaintiff's rights.

47.     That Plaintiff was similarly situated to Larry Gamble (male), Manager III; Eugene Morris (male), Manager III; and Scott Green (male), Deputy Chief Manager II, in that they

performed a similar position and duties. Further, they were also supervised by Hardy Bennett and Dr. Raymond Crowel and received more favorable treatment in that they were not involuntary transferred, did not have their supervisory responsibilities removed from them, were not placed on administrative leave, or were otherwise adversely affected.

48.     That Plaintiff was discriminated against in employment based on her gender when she was treated less favorably than similarly situated male employees, including but not limited to Larry Gamble, Eugene Morris, and Scott Green who were not subjected to the aforementioned acts of discrimination, including but not limited to: involuntary transfer, removal of supervisory duties, and placement on administrative leave. A motivating factor for taking the aforementioned adverse job actions against Plaintiff was because of her gender.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT II
## DISABILITY DISCRIMINATION
### (Disparate Treatment)
### Americans with Disabilities Act of 1990, as amended
### 42 U.S.C. § 12101, et seq.

49.     Plaintiff hereby restates and incorporates Paragraphs 1 through 39 of this Complaint as though fully set forth herein.

50.     Title I of the ADA, 42 U.S.C. §§ 12111-12117, prohibits discrimination against disabled individuals in the terms, conditions, and privileges of employment.

51.     Defendant is a "covered entity" and "employer" under Title I of the ADA, 42 U.S.C. § 12111(2) and (5) respectively.

52.     Plaintiff was qualified for her position as a Manager III and was performing her job duties at a level that met or exceeded Defendant's legitimate expectations.

53.     At all relevant times herein, Plaintiff suffered from a "disability" as that term is defined in the Americans with Disabilities Act, as she suffered from a condition, namely anxiety and depression, that resulted in her experiencing elevated stress and having difficulty concentrating.

54.     Plaintiff nevertheless was able to carry out the essential functions of her position with or without reasonable accommodation.

55.     In 2015, Plaintiff notified her employer of her disabilities.

56.     That similarly-situated employees outside the protected class, including but not limited to other individuals in her department, namely Larry Gamble (Manager III), Eugene Morris (Manager III), and Scott Green (Deputy Chief Manager II) all individuals without disabilities and all employed by the Defendant, were not subjected to the same kind of adverse employment actions that Plaintiff endured, including, but not limited to: involuntary transfer, removal of supervisory duties, and placement on administrative leave.

57.     As a direct and proximate result of the Defendant's discriminatory actions, Plaintiff has suffered lost wages and lost benefits, emotional and physical distress, she has incurred attorney's fees, and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT III**
**HOSTILE WORK ENVIRONMENT**
**(Adverse Actions and Protected Activity Deterrents)**
**Title VII of the Civil Rights Act of 1964**
**42 U.S.C. §§ 2000e et seq.**

58.     Plaintiff hereby restates and incorporates Paragraphs 1 through 39 of this Complaint as though fully set forth herein.

59.     The actions set forth above were designed to intimidate, harass, and humiliate Plaintiff.

60.     That Defendant's supervisors carried out the aforementioned acts against Plaintiff on the basis of her gender (female)

61.      That the aforementioned acts constitute unlawful practices pursuant to Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e et seq.

62.     That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her gender (female).

63.     That the unlawful employment practices complained of above were intentional, unwelcome, and personally hostile and offensive to Plaintiff.

64.     That the aforementioned conduct of Defendant's supervisory employees was sufficiently severe and pervasive so as to alter the terms and conditions of Plaintiff's employment and to create an intimidating, hostile and offensive working environment for Plaintiff.

65.     That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation and mental anguish as well as to incur legal fees and court costs.

66.     That the intentional actions of Defendant against Plaintiff, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

67.     That Defendant knew or should have known of the aforementioned conduct of Defendant's supervisory employees against Plaintiff and failed to take prompt corrective actions.

68.     That Defendant is vicariously liable for the conduct of its supervisory employees carried out in the course and scope of their employment. All of the acts set forth above by the supervisory employees were carried out in the course and scope of their employment.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT IV**
**HOSTILE WORK ENVIRONMENT**
**(Adverse Actions and Protected Activity Deterrents)**
**Americans with Disabilities Act of 1990, as amended**
**42 U.S.C. §§ 12101 et seq.**

69.     Plaintiff hereby restates and incorporates Paragraphs 1 through 39 of this Complaint as though fully set forth herein.

70.     The actions set forth above were designed to intimidate, harass, and humiliate Plaintiff.

71.     That Defendant's supervisors carried out the aforementioned acts against Plaintiff on the basis of her disability (anxiety and depression).

72.     That the aforementioned acts constitute unlawful practices pursuant to Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 et seq.

73.     That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability (anxiety and depression).

74.     That the unlawful employment practices complained of above were intentional, unwelcome, and personally hostile and offensive to Plaintiff.

75.     That the aforementioned conduct of Defendant's supervisory employees was sufficiently severe and pervasive so as to alter the terms and conditions of Plaintiff's

employment and to create an intimidating, hostile and offensive working environment for Plaintiff.

76.     That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation and mental anguish as well as to incur legal fees and court costs.

77.     That the intentional actions of Defendant and its supervisory employees against Plaintiff, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

78.     That Defendant knew or should have known of the aforementioned conduct of Defendant's supervisory employees against Plaintiff and failed to take prompt corrective actions.

79.     That Defendant is vicariously liable for the conduct of its supervisory employees carried out in the course and scope of their employment. All of the acts set forth above by the supervisory employees were carried out in the course and scope of their employment.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT V
## RETALIATION
## (Adverse Actions and Protected Activity Deterrents)
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. §§ 2000e et seq.

80.     Plaintiff hereby restates and incorporates Paragraphs 1 through 39 of this Complaint as though fully set forth herein.

81.      Plaintiff was subjected to three involuntary transfers between 2013 and 2017 after she complained regarding being treated in a disparate manner. With each transfer, Plaintiff's duties were further reduced and were no longer commensurate with her qualifications and title.

82.     The aforementioned legally protected activities were known by management to have occurred.

83.     The subsequent hostile work environment, involuntary transfers, and revised position as set forth in the above-referenced facts common to all counts amounted to illegal retaliation.

84.     That the aforementioned acts of retaliation for complaining of discrimination and retaliation constitute unlawful employment practices pursuant to Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e et seq.

85.     That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee based upon a disability.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT VI**
**RETALIATION**
**(Adverse Actions and Protected Activity Deterrents)**
**Americans with Disabilities Act of 1990, as amended**
**42 U.S.C. §§ 12101 et seq.**

86.     Plaintiff hereby restates and incorporates Paragraphs 1 through 39 of this Complaint as though fully set forth herein.

87.     Plaintiff was subjected to three involuntary transfers between 2013 and 2017 after she complained regarding being treated in a disparate manner. With each transfer, Plaintiff's duties were further reduced and were no longer commensurate with her qualifications and title.

88.     The aforementioned legally protected activities were known by management to have occurred.

89.     The subsequent hostile work environment, involuntary transfers, and revised position as set forth in the above-referenced facts common to all counts amounted to illegal retaliation.

90.     That the aforementioned acts of retaliation for complaining of discrimination and retaliation constitute unlawful employment practices pursuant to Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq. (2000).

91.     That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee based upon a disability.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT VII**
**GENDER DISCRIMINATION**
**(Disparate Treatment)**
**MARYLAND CODE ANN.,**
**STATE GOVERNMENT ARTICLE, §§ 20-601(a)-(d), 20-606(a)(4), 20-609**

92.     Plaintiff hereby restates and incorporates Paragraphs 1 through 39 of this Complaint as though fully set forth herein.

93.     That Defendant carried out the aforementioned acts of discrimination against Plaintiff based on her gender (female) – a protected class under Maryland Code Ann., State Government Article.

94.     That the aforementioned acts constitute unlawful practices pursuant to Maryland Code Ann., State Government Article.

95.     That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her gender (female).

96.     That the unlawful employment practices complained of above were intentional.

97.     That the discriminatory actions as set forth above, have cause and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation, and mental anguish.

98.     That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or reckless indifference to Plaintiff's rights.

99.     That Plaintiff was similarly situated to Larry Gamble (male), Manager III; Eugene Morris (male), Manager III; and Scott Green (male), Deputy Chief Manager II, in that they performed a similar position and duties. Further, they were also supervised by Hardy Bennett and Dr. Raymond Crowel and received more favorable treatment in that they were not involuntary transferred, did not have their supervisory responsibilities removed from them, were not placed on administrative leave, or were otherwise adversely affected.

100.    That Plaintiff was discriminated against in employment based on her gender when she was treated less favorably than similarly situated male employees, including but not limited to Larry Gamble, Eugene Morris, and Scott Green who were not subjected to the aforementioned acts of discrimination, including but not limited to: involuntary transfer, removal of supervisory duties, and placement on administrative leave. A motivating factor for taking the aforementioned adverse job actions against Plaintiff was because of her gender.

        WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT VIII**
**DISABILITY DISCRIMINATION**
**(Disparate Treatment)**
**MARYLAND CODE ANN.,**
**STATE GOVERNMENT ARTICLE, §§ 20-601(a)-(d), 20-606(a)(4), 20-609**

101.    Plaintiff hereby restates and incorporates Paragraphs 1 through 39 of this Complaint as though fully set forth herein.

102.    Maryland Code Ann., State Government Article, § 20-609 prohibits discrimination against disabled individuals in the terms, conditions, and privileges of employment.

103.    Defendant is a "covered entity" and "employer" Maryland Code Ann., State Government Article, § 20-609.

104.    Plaintiff was qualified for the position she formerly held and was performing her job duties at a level that met or exceeded Defendant's legitimate expectations.

105.    At all relevant times herein, Plaintiff suffered from a "disability" as that term is defined in the Maryland Code Ann., State Government Article, § 20-609, as she suffered from a condition, namely anxiety and depression, that resulted in her experiencing elevated stress and having difficulty concentrating.

106.    Plaintiff was able to carry out the essential functions of her position with or without reasonable accommodation.

107.    In 2015, Plaintiff notified her employer of her disabilities, anxiety and depression.

108.    That similarly-situated employees outside the protected class, including but not limited to other individuals in her department, namely Larry Gamble (Manager III), Eugene Morris (Manager III), and Scott Green (Deputy Chief Manager II) individuals without disabilities and employed by the Defendant, were not subjected to the same kind of severe

adverse employment actions that Plaintiff endured, including, but not limited to: involuntary

transfer, removal of supervisory duties, and placement on administrative leave.

109.    As a direct and proximate result of the Defendant's discriminatory actions,

Plaintiff has suffered lost wages and benefits, emotional and additional physical distress,

incurred attorney's fees, and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT IX**
**HOSTILE WORK ENVIRONMENT**
**(Adverse Actions and Protected Activity Deterrents)**
**MARYLAND CODE ANN.**
**STATE GOVERNMENT ARTICLE, § 20-606**

110.    Plaintiff hereby restates and incorporates Paragraphs 1 through 39 of this

Complaint as though fully set forth herein.

111.    The actions set forth above were designed to intimidate, harass, and humiliate

Plaintiff.

112.    That Defendant's supervisors carried out the aforementioned acts against Plaintiff

on the basis of her gender and/or disability (anxiety and depression).

113.    That the aforementioned acts constitute unlawful practices pursuant to Maryland

Code Ann., State Government Article, § 20-606.

114.    That the effect of the practices complained of above was to deprive Plaintiff of

equal employment opportunities and otherwise adversely affect her status as an employee

because of her gender and/or disability (anxiety and depression).

115.    That the unlawful employment practices complained of above were intentional,

unwelcome, and personally hostile and offensive to Plaintiff.

116.    That the aforementioned conduct of Defendant's supervisory employees was sufficiently severe and pervasive so as to alter the terms and conditions of Plaintiff's employment and to create an intimidating, hostile and offensive working environment for Plaintiff.

117.    That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation and mental anguish as well as to incur legal fees and court costs.

118.    That the intentional actions of Defendant and its supervisory employees against Plaintiff, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

119.    That Defendant knew or should have known of the aforementioned conduct of Defendant's supervisory employees against Plaintiff and failed to take prompt corrective actions.

120.    That Defendant is vicariously liable for the conduct of its supervisory employees carried out in the course and scope of their employment. All of the acts set forth above by the supervisory employees were carried out in the course and scope of their employment.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT X**
**RETALIATION**
**(Adverse Actions and Protected Activity Deterrents)**
**MARYLAND CODE ANN.**
**STATE GOVERNMENT ARTICLE, § 20-606**

121.    Plaintiff hereby restates and incorporates Paragraphs 1 through 39 of this Complaint as though fully set forth herein.

122.     Plaintiff was subjected to three involuntary transfers between 2013 and 2017 after she complained regarding being treated in a disparate manner. With each transfer, Plaintiff's duties were reduced and were no longer commensurate with her qualifications and title.

123.     The aforementioned legally protected activities were known by management to have occurred.

124.     The subsequent hostile work environment, denial of request for assistance, and revised position as set forth in the above-referenced facts common to all counts amounted to illegal retaliation.

125.     That the aforementioned acts of retaliation for complaining of discrimination and retaliation constitute unlawful employment practices pursuant to Maryland Code Ann., State Government Article, § 20-609.

126.     That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee based upon a disability.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT XI**
**INTERFERENCE WITH RIGHTS UNDER FMLA**
**(Violation of the Family and Medical Leave Act)**

127.     Plaintiff hereby restates and incorporates Paragraphs 1 through 39 of this Complaint as though fully set forth herein.

128.     The FMLA provides, *inter alia*, that an eligible employee is entitled to up to twelve (12) weeks of leave without pay during any twelve (12)-month period in order to recover from a serious medical condition, and that such eligible employee is entitled to be restored to the

same or equivalent position at the conclusion of the leave. The FMLA also enables the employee to take medical leave intermittently when medically necessary. 29 USCS § 2612 (b).

129.    At the time Plaintiff notified her supervisors of her need to use sick time, she required time off for diagnostics, treatment, and follow-up.

130.    Defendant was aware of the circumstances surrounding Plaintiff's medical condition and acknowledged Plaintiff's need to be absent from work due to her medical condition. The leave began on or around November 20, 2017.

131.    In requesting the leave due to illness, Plaintiff was exercising, or attempting to exercise, her lawful rights under the FMLA as it was Defendant's policy to convert the use of three of more sick days into FMLA.

132.    Defendant denied Plaintiff of her rights under the FMLA to take leave in order to care for her serious medical condition by denying Plaintiff leave and, instead disciplined her for being AWOL. This conduct amounts to a denial of FMLA benefits under 29 U.S.C. § 2615 (a)(1) which provides that it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the FMLA.

133.    As a direct and proximate result of Defendant's interference with Plaintiff's rights under the FMLA, she has suffered lost wages and benefits, emotional distress, attorney's fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

### COUNT XII
### RETALIATION
### (Violation of the Family and Medical Leave Act)

134.    Plaintiff hereby restates and incorporates Paragraphs 1 through 39 of this Complaint as though fully set forth herein.

135.    As an eligible employee under the FMLA as described above, Plaintiff had the right to take up to twelve (12) weeks of unpaid intermittent medical leave in connection with her serious medical condition (an infection causing an elevated fever and lesions to her face).

136.    At the time Plaintiff requested medical leave, she was suffering from a serious medical condition that required time off for diagnostics, treatment, and follow-up.

137.    Defendant was aware of the circumstances surrounding Plaintiff's medical condition and acknowledged Plaintiff's need to be absent from work due to her medical condition. The leave began on or around November 20, 2017.

138.    In requesting the subject family medical leave, Plaintiff was exercising, or attempting to exercise, her lawful rights under the FMLA.

139.    Defendant thereafter denied Plaintiff leave to see medical practitioners for treatment because Plaintiff exercised, or attempted to exercise, her lawful rights under the FMLA. Instead, Defendant classified Plaintiff's absence as "AWOL."

140.    Defendant also thereafter involuntarily transferred Plaintiff because she exercised, or attempted to exercise, her lawful rights under the FMLA.

141.    Defendant's aforementioned retaliatory conduct was in violation of the FMLA, 29 U.S.C. § 2615.

142.    Defendant's unlawful conduct, as set forth above, was willful and wanton, and/or was done with malice or in reckless disregard for Plaintiff's rights under the FMLA.

143.    Defendant's aforementioned retaliatory conduct proximately caused economic and non-economic damages to Plaintiff, including severe emotional distress and lost wages.

144.     Defendant's unlawful conduct, as set forth above, was not in good faith and Defendant lacked reasonable grounds for believing that this conduct was not a violation of 29 U.S.C. § 2615.

WHEREFORE, Plaintiff prays for relief as more fully set below.

**COUNT XIII**
**GENDER DISCRIMINATION**
**(Disparate Treatment)**
**EQUAL PAY ACT OF 1963, as amended**
**29 U.S.C.S. § 206(d), et seq.**

145.     Plaintiff hereby restates and incorporates Paragraphs 1 through 39 of this Complaint as though fully set forth herein.

146.     That Defendant carried out the aforementioned acts of discrimination against Plaintiff based on her gender (female) – a protected class under the Equal Pay Act of 1963, as amended.

147.     That the aforementioned acts constitute unlawful practices pursuant to Equal Pay Act of 1963, as amended, 29 U.S.C.S. §§ 206(d) et seq.

148.     That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her gender (female).

149.     That Plaintiff was similarly situated to Eugene Morris (male), Manager III and Larry Gamble (male), Manager III in that both performed the same role as Plaintiff.

150.     That despite Eugene Morris and Larry Gamble both occupying the same position as Plaintiff, but with less seniority, they both earn a higher salary than Plaintiff.

151.    That Plaintiff was discriminated against in employment based on her gender when she was paid less than male employees with the same title and position as Plaintiff, including but not limited to Eugene Morris and Larry Gamble.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## PRAYER FOR DAMAGES

WHEREFORE, for the foregoing reasons, Catherine McAlpine-Eig, Plaintiff, demands judgment against Defendant, Montgomery County Department of Health and Human Services, as follows:

a.  Lost wages to be determined;

b.  Damages for her emotional distress and mental anguish in the amount of $150,000.00;

c.  Prejudgment and post judgment interest;

d.  Award attorney's fees and costs, including expert witness fees, as allowed by law;

e.  Award past and future economic damages for all claims as allowed by law, in an amount to be determined at trial, including, but not limited to, back pay and lost benefits, COBRA payments incurred by Plaintiff, front pay, and special damages comprised in part of, but not limited to, past and future costs of borrowing funds to meet financial obligations, and past and future out-of-pocket pecuniary losses;

f.  Award past and future non-economic damages for all claims as allowed by law, in an amount to be determined at trial, including, but not limited to, lost earnings capacity, mental suffering, emotional distress, loss of enjoyment of life, humiliation, loss of reputation, and inconvenience;

g.  And for such other and further relief as this Honorable Court deems just and

equitable.

Respectfully Submitted,

_____/s/_____          _____/s/_____
Paul V. Bennett, Esq.  (Bar No. 10324)          Elizabeth A. Marcus-Wenger, Esq. (Bar No. 30123)
Bennett & Ellison, P.C.                         Bennett & Ellison, P.C.
2086 Generals Highway, Suite 201                2086 Generals Highway, Suite 201
Annapolis, Maryland 21401                       Annapolis, Maryland 21401
Tel: (410) 974-6000                             Tel: (410) 974-6000
Email: pbennett@belawpc.com                     Email: emarcuswenger@belawpc.com
*Attorney for Plaintiff*                         *Attorney for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff, Catherine McAlpine-Eig, by and through her attorneys, Paul V. Bennett, Esq.,

Elizabeth A. Marcus-Wenger, Esq., and Bennett & Ellison, P.C., hereby demands that this

above-captioned matter be tried before a jury on all issues so triable.

Respectfully Submitted,

_____/s/_____          _____/s/_____
Paul V. Bennett, Esq.                           Elizabeth A. Marcus-Wenger, Esq.
Bennett & Ellison, P.C.                         Bennett & Ellison, P.C.
2086 Generals Highway, Suite 201                2086 Generals Highway, Suite 201
Annapolis, Maryland 21401                       Annapolis, Maryland 21401
Tel: (410) 974-6000                             Tel: (410) 974-6000
Email: pbennett@belawpc.com                     Email: emarcuswenger@belawpc.com
*Attorney for Plaintiff*                         *Attorney for Plaintiff*