| CATHERINE MCALPINE-EIG | * | IN THE |
|---|---|---|
| Plaintiff, | * | UNITED STATES DISTRICT COURT |
| v. | * | FOR THE |
| MONTGOMERTY COUNTY, MARYLAND | * | DISTRICT OF MARYLAND |
| Defendant. | * | Civil Action No. 8:19-cv-02536-PJM |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, Catherine McAlpine-Eig, by and through her attorneys, Paul V. Bennett, Elizabeth A. Marcus-Wenger, and Bennett and Ellison, P.C., respectfully submits this Memorandum of Law in Opposition to Defendant's Motion to Dismiss (ECF Doc. No. 7) and accompanying Memorandum of Grounds and Authorities in Support of Defendant's Motion to Dismiss (ECF Doc. No. 7-2). In support of this Opposition to Defendant's Motion to Dismiss, Plaintiff states:

## I.     INTRODUCTION

Plaintiff, a female employee of Defendant with a disability, has filed the within lawsuit asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (hereinafter "Title VII"); the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"); the Family Medical Leave Act, 29 U.S.C. § 2615; Equal Pay Act of 1963, 29 U.S.C.S. § 206(d), et seq.; and Maryland State Code Ann., State Government Article, § 20-601 and 20-606[1] for gender discrimination, disability discrimination, hostile work environment based on gender and disability, retaliation based on gender and disability, interference with Plaintiff's rights under the Family Medical Leave Act ("FMLA"), retaliation under FMLA, and gender

---

[1] Plaintiff does not seek to pursue any State claims under State Government Article, §20-609 (discrimination based on pregnancy).

discrimination under the Equal Pay Act. Defendant responded to Plaintiff's Complaint by filing

the pending Motion to Dismiss (ECF Doc. No. 7) as to all counts claiming that Plaintiff did not

properly alleged that she exhausted her administrative remedies and that she failed "to state a

claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). As explained in detail below,

Plaintiff has properly exhausted her administrative remedies and has pled a *prima facie* case as to

all counts. Therefore, it is improper to dismiss any counts of Plaintiff's Complaint.

II.     **STANDARD OF REVIEW**

        When a complaint is challenged by a Rule 12(b)(6) motion to dismiss, details of factual

allegations are not required. However, Plaintiff must be able to show more than "labels and

conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). Further, "all the Rules require is 'a short and plain

statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and

the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41 (1957). "Such simplified 'notice

pleading' is made possible by the liberal opportunity for discovery and other pretrial procedures

established by the Rules to disclose more precisely the basis of both claim and defense and to

define more narrowly the disputed facts and issues." *Id.* at 47-8. "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). When a federal court, as here, reviews a complaint in a challenge under Rule 12(b)(6),

the "issue is not whether plaintiff will ultimately prevail but whether the claimant is entitled to

offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

III.   **ARGUMENT**

A. **Plaintiff has Corrected the Named Defendant via her Consent Motion to Amend by Interlineation.**

On November 14, 2019, Plaintiff filed a Consent Motion to Amend by Interlineation (ECF. Doc. No. 10) to correct the named Defendant from Montgomery County Department of Health and Human Services to Montgomery County, Maryland. This Honorable Court granted the motion on the same day. ECF Doc. No. 11. Therefore, Plaintiff has cured Defendant's alleged defect and the Complaint should therefore not be dismissed on these grounds.

B. **Plaintiff has Pled Facts Sufficient Establishing that She Exhausted Her Administrative Remedies for Title VII and ADA Claims for Disparate Treatment and Retaliation (Counts I, II, V, and VI).**

Defendant asserts that Plaintiff has not pled sufficient facts to assert that she has exhausted her administrative remedies for relief under Title VII and the ADA. Further, Defendant claims that Plaintiff failed to exhaust her administrative remedies in that she did not timely file a Charge of Discrimination to include all instances of discrimination enumerated in her Complaint and the corresponding Charge of Discrimination. Plaintiff contacted the Maryland Commission on Civil Rights on March 22, 2018 and proceeded to file her Charge of Discrimination on September 10, 2018 based on the facts contained within her Complaint. ECF Doc. No. 1, ¶8. See also ECF Doc. No. 1, ¶¶9-39. Plaintiff then received her Notice of Right to Sue from the Equal Employment Opportunity Commission (EEOC) on June 6, 2019.

The "continuing violation" doctrine "operates to save certain unexhausted, otherwise time-barred claims." *Carson v. Giant Food, Inc.*, 187 F. Supp. 2d 462, 473 (D. Md. 2002). To allege a "continuing violation" of anti-discrimination laws, the plaintiff must allege that a discriminatory act was committed within the limitations period. *Redding v. Anne Arundel County*, 996 F. Supp. 488, 490 (D. Md. 1998). A "continuing violation" exists when there "is a

pattern of ongoing or continuous discrimination, which is sometimes referred to as a 'serial violation.'" *Id.* (internal citation omitted). "A serial violation exists when an employer engages in a series of discriminatory actions deriving from 'the same discriminatory animus.'" *Id.* (internal citation omitted). "A plaintiff must demonstrate both a discriminatory act within the limitations period, and a relationship between the act within the limitations period and the acts or events which would otherwise be time-barred, to prevail on a serial violation theory." *Id.*

In the case at bar, Defendant acknowledges that Plaintiff timely filed her Charge of Discrimination for claims under Title VII and the ADA as to events beginning on November 14, 2017. Beginning on and subsequent to November 14, 2017, Plaintiff allegedly suffered several instances of discrimination, retaliation, and hostile work environment. These instances include, but are not limited to, being accused of being improperly absent from work on November 22, 2017 through November 30, 2017 and being threatened with being labeled as absent without leave on November 22, 2017 and November 24, 2017 ("AWOL") (ECF Doc. No. 1, ¶¶ 24-34); being involuntarily transferred on or about November 29, 2017 (ECF Doc. No. 1, ¶ 33); being suspended without pay on June 7, 2018 (ECF Doc. No. 1, ¶ 36); being treated less favorably than her male colleagues since no later than 2013 (ECF Doc. No. 1, ¶¶ 14, 15, 17-19, 22, 24, 28, 30-39); and being treated less favorably than her colleagues without disabilities no later than 2015 (ECF Doc. No. 1, ¶¶ 17-19, 22, 24, 28, 30-39).

Plaintiff had no reason to believe she had a plausible claim of racial discrimination "until the culmination of a long period of discrimination [made] clear the violation." *See Derrickson v. Circuit City Stores, Inc.*, 84 F. Supp. 2d 679, 687 (D. Md. 2000). Thus, the "continuing violation" doctrine applies in the matter *sub judice* and thereby Plaintiff's claims of hostile work

environment, prior involuntary transfers as well as disparate treatment based on her gender and disability were timely raised and properly exhausted.

**C. Plaintiff's Claims of Alleged Disparate Treatment or Retaliatory Acts, Arising Under State Law, that Occurred 300 Days Prior to Plaintiff's Charge of Discrimination, Are Not Time Barred (Counts VII, VIII, and X).**

Plaintiff references and includes all arguments in Section B above as Title VII and Maryland's Fair Employment Protections Act ("MFEPA") are analogous statutes at the federal and state levels.[2]

**D. Plaintiff's MFEPA Allegations Regarding Complaints of Disparate Treatment or Retaliation and Federal ADA Claims of Disparate Treatment and Retaliation, Arising Prior to September 3, 2017 Are Not Barred by any Statute of Limitations (Counts II, VI, and VII, VII, and X).**

Plaintiff references and includes all arguments in Section B above as the ADA and MFEPA are analogous statutes at the federal and state levels. See also Footnote 2.

**E. Plaintiff Properly Gave Notice as to the Local Government Tort Claims Act and Seeks to Amend her Complaint to Cure the Nominal Deficiency (Counts VII-X).**

On or about April 16, 2018, under-signed counsel served Isiah Leggett, County Executive, with notice of Plaintiff's claims pursuant to the Local Government Tort Claims Act.[3] Plaintiff filed her Consent Motion to Amend Complaint with this Opposition to Motion to Dismiss in order to cure the deficiency noted in the Motion to Dismiss that the Complaint fails to state proper notice had been provided, which said Consent Motion was then granted on or about November 14, 2019. ECF Doc. No. 11.

---

[2] All claims are discussed in terms of the federal provisions. Maryland law, including, but not limited to the Fair Employment Protections Act is analogous to its federal counterparts. Therefore, arguments presented with federal precedent should be considered to pertain to state claims as well as the courts have traditionally used federal case cases to evaluated state law claims. *Schmidt v. Town of Cheverly*, 212 F.Supp. 3d 573, 580 (D. Md. 2016).

[3] Plaintiff will file a Second Motion to Amend Complaint by November 20, 2019 regarding this matter. Defendant's counsel has consented to this amendment.

Assuming, arguendo, in the unlikely event that this Honorable Court would not find that Plaintiff properly gave notice in accordance with the Local Government Tort Claims Act, Maryland State Code Ann., Courts and Judicial Proceedings, § 5-304, the State of Maryland has waived its sovereign immunity for employment discrimination matters. Maryland State Code Ann., State Government Article, § 20-903. Because Defendant is a subdivision of the state government, the defense of sovereign immunity has therefore been waived in this case. Either way it would be inappropriate to dismiss her Complaint on these grounds.

1. **Plaintiff's Claim is not Subject to the Local Government Tort Claims Act.**

Under Md. State Gov't Code Ann. § 20-903, the State of Maryland waived its "sovereign immunity as a defense against an award in an employment discrimination case under this title." Defendant is a subsidiary of the State. Therefore, because the State has waived sovereign immunity as to employment discrimination matters, so too has Defendant.

2. **Plaintiff's Claim is not Time Barred Under the Local Government Tort Claims Act.**

The Local Government Tort Claims Act provides, in pertinent part, "This section does not apply if, within 1 year after the injury, the defendant local government has actual or constructive notice of: (1) The claimant's injury; or (2) The defect or circumstances giving rise to the claimant's injury." Md. Code Ann., Cts. & Jud. Proc., § 5-304 (e). In the case at bar, Plaintiff filed with the Maryland Commission on Civil Rights ("MCCR") on September 10, 2018 and remained engaged in the administrative process with Defendant before the MCCR for at least 180 days. Therefore, Defendant had actual notice within the one-year period for all events beginning on or about fall of 2017 even if this Honorable Court were to find that notice was not done within the specifications of the Local Government Tort Claims Act.

### 3. Defendant has Failed to Demonstrate the Requisite Prejudice to Invoke the Local Government Tort Claims Act.

The Local Government Tort Claims Act, Md. Code Ann., Cts. and Jud. Proc., § 5-304(d) provides:

> Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given.

Therefore, even if Defendant argues that the previously referenced letter sent to County Executive, Isiah Leggitt did not constitute actual notice, Defendant would still have to "affirmatively show" that it had been prejudiced in its ability to defend the suit because of the claimed lack of notice. This argument, if it had been raised, would have failed anyway as Defendant clearly had plenty of notice. Indeed, the lack of any assertion of prejudice in its Motion to Dismiss and its having engaged with the MCCR during the administrative process belies any argument concerning prejudice.

Because Defendant has waived sovereign immunity because Plaintiff properly gave notice under the Local Government Tort Claims Act, and because no prejudice has been claimed, it is improper to dismiss Plaintiff's Complaint.

### F. Plaintiff has Properly Pled her Claim of Discrimination under the ADA Making it Improper to Dismiss Counts II and VIII.

To establish a *prima facie* case of discrimination based on disability under Title 1 of the Americans with Disabilities Act ("ADA"), Plaintiff "must produce evidence to show she: (1) is a member of a protected class; (2) was performing her duties in a satisfactory manner; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated individuals outside of her protected class." *Ransome v. Barnhart*, 2005 U.S. Dist. LEXIS 8112, *13-14 (D. Md. 2005).

### 1. Plaintiff Allegedly Suffered from a "Disability" as Defined in the ADA.

Plaintiff alleged she suffered from a "disability" as defined by the Americans with Disability Act as she suffered from anxiety and depression. ECF Doc. No. 1, ¶ 9, 16. A disability is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 USC § 12102(1)(A). Further, "major life activities" is defined as including, but limited to, "caring for oneself,…concentrating, thinking, communicating, and working." Defendant was aware of Plaintiff's disabilities beginning in 2015. ECF Doc. No. 1, ¶ 16.

### 2. Plaintiff was Allegedly able to Carry out the Essential Functions of her Position with or without Reasonable Accommodation.

Plaintiff alleged she was able to carry out all essential functions of her position with or without reasonable accommodation. ECF Doc. No. 1, ¶ 13. Her essential functions included, but were not limited to, leading work groups, interfacing with the community, managing employees, and handling department finances. ECF Doc. No. 1, ¶ 15, 17, 19, 33.

### 3. Defendant Allegedly took an Adverse Action Against Plaintiff on Account of her Disability.

On July 1, 2013, October of 2015, and November 29, 2017, Plaintiff was allegedly subjected to involuntary transfers. ECF Doc. No. 1, ¶¶ 15, 17, 24, and 33. Each transfer allegedly resulted in Plaintiff's duties being changed in a material manner. ECF Doc. No. 1, ¶ 15, 17, 33. Plaintiff was allegedly then labeled as AWOL on or about November 27, 2017. ECF Doc. No. 1, ¶ 30. Further, Plaintiff was then allegedly placed on administrative leave beginning on June 7, 2018. ECF Doc. No. 1, ¶ 36.

**G. Plaintiff Sufficiently Pled a Claim for Hostile Work Environment Under Title VII or MFEPA Making it Improper to Dismiss Counts III and IX.**

"To demonstrate … harassment and/or a racially hostile work environment, a plaintiff must show that there is '(1) unwelcome conduct; (2) that is based on the plaintiff's sex [and/or] race; (3) which is sufficiently severed or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010).

**1. Plaintiff Allegedly Experienced Unwelcome Conduct.**

Plaintiff allegedly endured many instances of unwelcome conduct, specifically during the period of May 15, 2013 through June 7, 2018. ECF Doc. No. 1, ¶¶ 14, 15, 17-39. All instances occurred at the hands of Dr. Raymond Crowel and Hardy Bennett. *Id*. These instances included, but were not limited to, being subjected to a protracted method for mileage reimbursement, exclusion from management and administrative meetings, insubordination from those reporting to her, removal of supervisory duties, harassment at her home when she was ill, and involuntary transfers. ECF Doc. No. 1, ¶¶ 14, 15, 17-19, 22, 24, 28, 30-39.

**2. The Unwelcome Conduct is Allegedly Based on Plaintiff's Gender.**

Singling out Plaintiff, a female Manager III, for "special scorn" satisfies the second element of hostile work environment claims. *Mosby-Grant, supra*. Plaintiff was allegedly singled out via consistent disparate and harassing treatment that included, but was not limited to involuntary transfers (ECF Doc. No. 1, ¶ 15, 17, 33), being forced to follow protracted processes that no male employees were required to follow (ECF Doc. No. 1, ¶ 14, 18), exclusion from management and administrative meetings (ECF Doc. No. 1, ¶ 15, 17, 33), placement on administrative leave (ECF Doc. No. 1, ¶ 36). Harassment "that occurs because of the victim's gender is actionable." *Hartsell v. Duplex Prods*., 123 F.3d 766, 772 (4th Cir. 1997). "An

employee is harassed or otherwise discriminated against 'because of' his or her sex, if 'but-for' the employee's sex, he or she would not have been the victim of discrimination." *Wrightson v. Pizza Hut of Am.*, 99 F. 3d 139, 142 (4th Cir. 1996). Plaintiff satisfies this prong as she has alleged that she was subjected to a protracted method for mileage reimbursement, excluded from management and administrative meetings, suffered insubordination from those reporting to her, removed from her supervisory duties, harassed at her home when she was ill, and involuntary transferred three times. ECF Doc. No. 1, ¶¶ 14, 15, 17, 18, 24, 33.

### 3. The Unwelcome Conduct was Alleged to be Sufficiently Severe or Pervasive so as to Alter the Terms and Conditions of her Employment.

"Element three of a hostile work environment claim requires a showing that 'the environment would reasonably be perceived, and is perceived, as hostile or abusive'; the plaintiff may, but is not required to establish that the environment is 'psychologically injurious.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 22 (1993)). "Whether the environment is objectively hostile or abusive is 'judged from the perspective of a reasonable person in the plaintiff's position.'" *Id.* at 277 (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

While Plaintiff allegedly faced challenges over her time working under Dr. Crowel and Mr. Bennett, beginning in 2013, the severity and frequency of harassment allegedly escalated significantly in 2017 when Plaintiff was micromanaged at an unparalleled level compared to her comparators and during the duration of her service to Defendant, was harassed at her home when she was out on leave due to a medically documented illness, involuntarily transferred with the blame of the transfer placed on her for her failure to attend a meeting while she was ill, and then placed on administrative leave in June of 2018 for an alleged investigation into purported misconduct. ECF Doc. No. 1, ¶¶ 20-36. "'Simple teasing,' offhand comments, and isolated

incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Further, ordinary workplace disagreements are not actionable discrimination. *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274 (4th Cir. 2000). Plaintiff's situation went well beyond isolated incidents as she has pled a frequent pattern of hostility and disparate treatment at the hands of her managers while her male colleagues suffered through no such similar actions nor were they subjected to these conditions, which hampered Plaintiff's ability to perform her job at her actual capabilities and normal performance due to the stress and emotional harm that Dr. Crowel and Mr. Bennett caused to her. ECF Doc. No. 1, ¶¶ 14, 15, 17-36.

### 4.   The Behavior is Allegedly Imputable to the Employer.

During all times in question, Dr. Crowel and Mr. Bennett were alleged to be management employees of Defendant and were allegedly acting in their official capacity as employees of Defendant. ECF Doc. No. 1, ¶¶ 14-15. Therefore, their actions towards Plaintiff in creating a hostile work environment are imputable to Defendant. See *Creech v. Rumsfeld*, 2004 U.S. Dist. LEXIS 27152, *35-36 (D. Md. 2004).

### H.  Plaintiff has Pled a *Prima Facie* Case of Hostile Work Environment Under the ADA and MFEPA.

To establish a *prima facie* case of discrimination based on disability under Title 1 of the Americans with Disabilities Act ("ADA"), Plaintiff "must produce evidence to show she: (1) is a member of a protected class; (2) was performing her duties in a satisfactory manner; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated individuals outside of her protected class." *Ransome v. Barnhart*, 2005 U.S. Dist. LEXIS 8112, *13-14 (D. Md. 2005).

**1. Plaintiff Allegedly suffered from a "Disability" as Defined in the ADA.**

Plaintiff has alleged she suffered from a "disability" as defined by the Americans with Disability Act as she suffered from anxiety and depression. ECF Doc. No. 1, ¶ 9. A disability is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 USC § 12102(1)(A). Further, "major life activities" is defined as including, but limited to, "caring for oneself,…concentrating, thinking, communicating, and working." Defendant was aware of Plaintiff's disabilities beginning in 2015. ECF Doc. No. 1, ¶ 16.

**2. Plaintiff was Allegedly able to Carry out the Essential Functions of her Position with or without Reasonable Accommodation.**

Plaintiff alleged she was able to carry out all essential functions of her position with or without reasonable accommodation. ECF Doc. No. 1, ¶¶ 11-13. Her essential functions allegedly included, but were not limited to, leading work groups, interfacing with the community, managing employees, and handling department finances. ECF Doc. No. 1, ¶¶ 11, 15, 17, 33.

**3. Defendant Allegedly took an Adverse Action Against Plaintiff on Account of her Disability.**

On July 1, 2013, October of 2015, and November 29, 2017, Plaintiff was allegedly subjected to involuntary transfers. ECF Doc. No. 1, ¶¶ 15, 17, 24, and 33. Each transfer allegedly resulted in Plaintiff's duties being changed in a material manner. ECF Doc. No. 1, ¶¶ 15, 17, 33. Plaintiff was allegedly then labeled as AWOL on or about November 27, 2017. ECF Doc. No. 1, ¶ 30. Further, Plaintiff was allegedly then placed on administrative leave beginning on June 7, 2018. ECF Doc. No. 1, ¶ 36.

**I.   Plaintiff Pled a *Prima Facie* Case of Retaliation Under Title VII and the MFEPA.**

To plead a *prima facie* case of retaliation under Title VII, the plaintiff-employee must show that (1) the plaintiff engaged in a protected activity; (2) the employer took an adverse employment action against the plaintiff; and (3) "that a causal relationship existed between the protected activity and the adverse employment activity." *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (citing *Price v. Thompson*, 380 F.3d 209 (4th Cir. 2004)).

**1. Plaintiff Allegedly Engaged in Protected Activities.**

Plaintiff allegedly made several complaints against Dr. Crowel, Mr. Bennett and Defendant's discriminatory practices to various individuals including, but not limited to Dr. Crowel (ECF Doc. No. 1, ¶14, 31, 35), Scott Greene (ECF Doc. No. 1, ¶14), Hardy Bennett (ECF Doc. No. 1, ¶35), and to the Maryland Commission on Civil Rights (ECF Doc. No. 1, ¶8). The Fourth Circuit "has articulated an expansive view of what constitutes oppositional conduct, recognizing that it 'encompasses utilizing informal grievance procedures as well as staging information protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities.'" *Demaster v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)). Here, Plaintiff has used both formal and informal means to complain regarding her treatment by Dr. Crowel and Mr. Bennett as described above.


[THIS SPACE INTENTIONALLY LEFT BLANK.]

**2. Soon After Plaintiff Engaged in Protected Activities, Defendant Allegedly Took Adverse Employment Actions Against Her, thereby Demonstrating a Causal Connection.**

Close temporal proximity "between an employer's knowledge of protected activity and an adverse employment action suffices to establish a *prima facie* case of causation where the temporal proximity is 'very close.'" See for example, *Jenkins v. Gaylord Entm't Co.*, 840 F. Supp. 2d 873, 881 (D. Md. 2012). Plaintiff allegedly made formal and informal complaints regarding Dr. Crowel and Mr. Bennett's treatment of her. ECF Doc. No. 1, ¶¶ 8, 14, 31-32, 35.

On or about May 15, 2013, Plaintiff allegedly complained to Dr. Crowel and Scott Greene regarding disparate treatment due to her gender. ECF Doc. No. 1, ¶14. In response, Plaintiff was allegedly transferred involuntarily on or about July 1, 2013 from Contract Administration to Outpatient Addiction and Mental Health Services and was excluded from management and other administrative meetings. ECF Doc. No. 1, ¶15. Plaintiff allegedly complained to Dr. Crowel and Mr. Bennett throughout 2013 through 2017 regarding the failure to review her performance and goals contrary to policy and treatment of other employees. ECF Doc. No. 1, ¶35. During this period, she allegedly endured three involuntary transfers. ECF Doc. No. 1, ¶15, 17, 24, 33. Further, she allegedly complained to Dr. Crowel on November 27, 2017 "regarding disparate treatment and unfair working conditions. ECF Doc. No. 1, ¶¶ 31-32. She allegedly specifically identified that she was contacted numerous times by telephone and email while she was on medical leave. ECF Doc. No. 1, ¶¶ 28, 30, 32, 34. She also allegedly complained that she had been falsely accused of being AWOL." ECF Doc. No. 1, ¶31. She allegedly made this complaint two days prior to being involuntarily transferred. ECF Doc. No. 1, ¶31-33. Finally, she allegedly complained to the Maryland Commission on Civil Rights when she filed her Charge of Discrimination. ECF Doc. No. 1, ¶36. She remains on administrative

leave. (ECF Doc. No. 1, ¶36).

Plaintiff satisfies the standard that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker form making or supporting a charge of discrimination.'" *Burlington Northern & Santa Fe. Ry. v. White*, 548 U.S. 53, 68 (2006) (citing *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.D.C. 2006)). Plaintiff's involuntary transfers with diminished duties and material changes to her employment as alleged would serve to send a chilling message to others who may seek to lodge similar complaints of discrimination.

**3. Additional Allegations of a Causal Link Between Plaintiff's Protected Activities and Subsequent Adverse Job Actions.**

In addition to the close temporal proximity, Plaintiff alleges that there was a direct causal connection between her exercising her rights against a retaliatory environment and then suffering an adverse job action. ECF Doc. No. 1, ¶¶ 15, 17, 22, 24, 28, 30-36. "Participatory activities are vigorously protected to ensure employees' continuing access to the EEOC and the enforcement process." *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).

"Activities that constitute participation are outlined in the statute: (1) making a charge; (2) testifying; (3) assisting; or (4) participating in a manner in an investigation, proceeding or hearing under Title VII." *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 259. See 42 U.S.C.A. § 2000e-3(a). As outlined above, Plaintiff participated in several ways, namely, for the reasons cited above.

**J. Plaintiff Pled a *Prima Facie* Case of Retaliation Under the ADA and MFEPA.**

To plead a *prima facie* case of retaliation under Title VII, the plaintiff-employee must claim that (1) the plaintiff engaged in a protected activity; (2) the employer took an adverse employment action against the plaintiff; and (3) "that a causal relationship existed between the

protected activity and the adverse employment activity." *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (citing *Price v. Thompson*, 380 F.3d 209 (4th Cir. 2004)).

### 1. Plaintiff Allegedly Engaged in Protected Activities.

In 2015, Plaintiff allegedly informed her employer of her disability. Plaintiff complained to Dr. Crowel and Mr. Bennett throughout, in pertinent part, 2015 through 2017 regarding the failure to review her performance and goals contrary to policy and treatment of other employees. ECF Doc. No. 1, ¶35. During this period, she allegedly endured two involuntary transfers. ECF Doc. No. 1, ¶15, 17, 24, 33. Further, she allegedly complained to Dr. Crowel on November 27, 2017 "regarding disparate treatment and unfair working conditions. She specifically identified that she was contacted numerous times by telephone and email while she was on medical leave. Further, she complained that she had been falsely accused of being AWOL." ECF Doc. No. 1, ¶31. She allegedly made this complaint two days prior to being involuntarily transferred. ECF Doc. No. 1, ¶31-33. Finally, she complained to the Maryland Commission on Civil Rights when she filed her Charge of Discrimination. ECF Doc. No. 1, ¶36. She remains on administrative leave. ECF Doc. No. 1, ¶36. These actions have served as to alter the terms and conditions of her employment.

Complaints are protected activity. The Fourth Circuit "has articulated an expansive view of what constitutes oppositional conduct, recognizing that it 'encompasses utilizing informal grievance procedures as well as staging information protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities.'" *Demaster v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)).

Here, Plaintiff has used both formal and informal means to complain regarding her treatment by Dr. Crowel and Mr. Bennett as described above.

**2. Soon After Plaintiff Engaged in Protected Activities, Defendant Allegedly Took Adverse Employment Actions Against her, thereby Demonstrating a Causal Connection.**

Close temporal proximity "between an employer's knowledge of protected activity and an adverse employment action suffices to establish a *prima facie* case of causation where the temporal proximity is 'very close.'" See for example, *Jenkins v. Gaylord Entm't Co.*, 840 F. Supp. 2d 873, 881 (D. Md. 2012). Plaintiff allegedly complained to Dr. Crowel and Mr. Bennett during 2015 through 2017 regarding the failure to review her performance and goals contrary to policy and treatment of other employees. ECF Doc. No. 1, ¶35. During this period, she allegedly endured two involuntary transfers. ECF Doc. No. 1, ¶15, 17, 24, 33. Further, she allegedly complained to Dr. Crowel on November 27, 2017 "regarding disparate treatment and unfair working conditions. She specifically identified that she was contacted numerous times by telephone and email while she was on medical leave. She also complained that she had been falsely accused of being AWOL." ECF Doc. No. 1, ¶31. She allegedly made this complaint two days prior to being involuntarily transferred. ECF Doc. No. 1, ¶31-33. Finally, she complained to the Maryland Commission on Civil Rights when she filed her Charge of Discrimination. ECF Doc. No. 1, ¶36. She remains on administrative leave. (ECF Doc. No. 1, ¶36).

**3. There is an Alleged Causal Link Between Plaintiff's Protected Activities and Subsequent Adverse Job Actions.**

In addition to the close temporal proximity, Plaintiff alleges that there was a direct causal connection between her exercising her rights against a retaliatory environment and then suffering an adverse job action. ECF Doc. No. 1, ¶¶ 20-34. "Participatory activities are vigorously

protected to ensure employees' continuing access to the EEOC and the enforcement process." *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).

"Activities that constitute participation are outlined in the statute: (1) making a charge; (2) testifying; (3) assisting; or (4) participating in a manner in an investigation, proceeding or hearing under Title VII." *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 259. See 42 U.S.C.A. § 2000e-3(a). As outlined above, Plaintiff complained orally and in writing and was forced to endure retaliatory actions as a result. Finally, Plaintiff satisfies the standard that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker form making or supporting a charge of discrimination.'" *Burlington Northern & Santa Fe. Ry. v. White*, 548 U.S. 53, 68 (2006) (citing *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.D.C. 2006)). As outlined above, Plaintiff participated in several ways, namely, for the reasons cited above.

**K. Plaintiff has Pled a *Prima Facie* Case of a Violation of the Family Medical Leave Act.**

The Family Medical Leave Act of 1993 extends to employees to "a total of 12 workweeks of leave during any 12-month period" for reasons that include "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. 2615(a)(1).

> To establish unlawful interference with an entitlement to FMLA benefits, an employee must prove that: (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her

FMLA benefits to which she was entitled.

*Rodriguez v. Smithfield Packing Co., Inc.*, 545 F. Supp. 2d 508, 516 (D. Md. 2008). As demonstrated below, Plaintiff has pled the requisite elements to demonstrate a *prima facie* case of Defendant's interference in Plaintiff's rights under the FMLA.

### 1. Plaintiff was an Eligible Employee.

An eligible employee is one who has been employed "for at least 12 months by the employer with respect to whom leave is requested" and "for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). Plaintiff pled that she was employed with Defendant since 1985. ECF Doc. No. 1, ¶ 10. Therefore, she has met the requirement to demonstrate that she worked the 12 months prior to her request for FMLA. As to the hours of service, Plaintiff satisfies the threshold requirement that she worked at least 1,250 hours during the preceding 12 months.[4] 29 U.S.C.§ 2611(2)(A); see also 29 C.F.R. § 825.111.

### 2. Plaintiff's Employer was Covered by the FMLA.

An "employer" is defined as "a person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. 2611(4)(A)(i). Defendant is clearly an employer as it is Montgomery County's government. ECF Doc. No. 1, ¶¶ 6-7.

---

[4] Plaintiff will file a Second Motion to Amend Complaint by November 20, 2019 to specifically state the amount of hours Plaintiff worked in the preceding 12 months. Plaintiff awaits a response from Defendant's counsel as to if it will consent to this amendment.

### 3.   Plaintiff was Entitled to Leave under the FMLA.

One of the qualifying reasons to access benefits under FMLA that is enumerated in the statute is "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). In the case at bar, Plaintiff allegedly became ill on or about November 20, 2017. ECF Doc. No. 1, ¶ 21. She then allegedly updated her supervisors on November 21, 2017 regarding the continuing nature of her illness and that she remained under doctor's case. ECF Doc. No. 1, ¶ 25. She then was allegedly required to return to her physician for further care and treatment on November 24, 2017. ECF Doc. No. 1, ¶ 27. Additionally, allegedly Plaintiff provided a doctor's note to Hardy Bennett on November 26, 2017 that documented her ongoing illness. ECF Doc. No. 1, ¶ 29. She also allegedly sent photos of the lesions that were on her face to Mr. Bennett on November 22, 2017 and November 24, 2017. ECF Doc. No. 1, ¶ 28.

### 4.   Plaintiff Allegedly Gave her Employer Adequate Notice of her Intention to Take Leave.

Plaintiff allegedly notified her employer as soon as she became ill. ECF Doc. No. 1, ¶ 20. From there, she allegedly kept her employer apprised. ECF Doc. No. 1, ¶¶ 21-34. Her illness and the need for leave was plausibly not predictable and it was allegedly sudden. ECF Doc. No. 1, ¶¶ 21-34. Therefore, allegedly/plausibly no advanced notice could be provided.

### 5.   Plaintiff's employer Allegedly Denied her the FMLA Benefits that She was Entitled to Receive.

Plaintiff's obligation when she became ill on or about November 19, 2017, was to notify her employer of her illness and need to miss work. "When the need for leave is not foreseeable, an employee must comply with the employer's usually and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(c). Here,

as alleged in her Complaint, on November 19, 2017, "Plaintiff informed her supervisor, Hardy Bennett, via email that she would not be in the office on Monday, November 20, 2017 as she was ill. He confirmed receipt of her email and her anticipated absence due to illness." ECF Doc. No. 1, ¶ 20. Further, Mr. Bennett allegedly confirmed receipt of the email and anticipated absence due to illness. ECF Doc. No. 1, ¶ 20.

From there, Defendant had an obligation to assess if Plaintiff qualified for FMLA.

> When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA. When an employee seeks leave due to a qualifying reason, for which the employer has previously provided the employee FMLA-protected leave, the employee must specifically reference either the qualifying reason for leave or the need for FMLA leave. Calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act. The employer will be expected to obtain any additional required information through informal means. An employee has an obligation to respond to an employer's questions designed to determine when an absence is potentially FMLA-qualifying.

29 C.F.R. 825.303(b). However, in the case at bar, Plaintiff allegedly contacted Defendant several times to apprise her supervisors of her illness and updates. ECF Doc. No. 1, ¶¶ 20-34. During the duration of Plaintiff's illness, she allegedly did not receive any communication in return from the Defendant or any employee of the Defendant. See ECF Doc. No. 1, ¶¶ 20-34. Therefore, Defendant allegedly failed to follow the required procedure under the FMLA, interfering with Plaintiff's rights under FMLA.

**L. Plaintiff has also Pled a *Prima Facie* Case of a Violation of the Family Medical Leave Act by Means of Retaliation.**

The elements of a claim of retaliation under the FMLA are "(1) that he or she engaged in FMLA-protected activity; (2) that the employer took an adverse employment action against the plaintiff; and (3) that there is a causal connection between the plaintiff's protected activity and

the employer's adverse employment action." Findlay v. PHE., Inc. 1999 U.S. Dist, LEXIS 9760, *7 (M.D.N.C. 1999).

    **1.**    **Plaintiff Allegedly Engaged in FMLA-Protected Activity.**

On November 19, 2017, November 20, 2017, November 21, 2017, November 24, 2017, November 26, 2017, Plaintiff allegedly notified Defendant of her illness and the need to be absent from work. ECF Doc. No. 1, ¶¶ 20-34. These reports should have triggered FMLA being invoked as described above. On November 27, 2017, Plaintiff allegedly complained to Dr. Crowel "regarding disparate treatment and unfair working conditions." ECF Doc. No. 1, ¶ 31. In doing so she "specifically identified that she was contacted numerous times by telephone and email while she was on medical leaves. Further, she complained that she had been falsely accused of being AWOL." *Id*. Therefore, Plaintiff allegedly complained regarding Defendant's interference with her rights under FMLA.

    **2.**    **Defendant Allegedly Took an Adverse Employment Action Against the Plaintiff.**

Defendant then allegedly took an adverse action of labeling her as "AWOL" or absent without leave. ECF Doc. No. 1, ¶¶ 30-32, 34. Further, Plaintiff was then allegedly subjected to an involuntary transfer two days later on November 29, 2017, which moved her from working on special projects to working in the Department of Corrections. ECF Doc. No. 1, ¶ 33. "As a result of this transfer, Plaintiff was allegedly excluded from supervisory responsibilities and continued to be excluded from participating in management meetings." *Id*. Further, her duties were allegedly divided between three individuals who were within her prior department. *Id*.

**3.      There is an Alleged Causal Connection Between Plaintiff's Protected Activity and Defendant's Adverse Employment Action.**

In addition to the close temporal proximity, Plaintiff alleges that there was a direct causal connection between her exercising her rights against a retaliatory environment and then suffering an adverse job action. ECF Doc. No. 1, ¶¶ 20-34.  "Participatory activities are vigorously protected to ensure employees' continuing access to the EEOC and the enforcement process." *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).

"Activities that constitute participation are outlined in the statute: (1) making a charge; (2) testifying; (3) assisting; or (4) participating in a manner in an investigation, proceeding or hearing under Title VII." *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 259. See 42 U.S.C.A. § 2000e-3(a). As outlined above, Plaintiff allegedly complained orally and in writing and was forced to endure retaliatory actions as a result. Finally, Plaintiff satisfies the standard that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker form making or supporting a charge of discrimination.'" *Burlington Northern & Santa Fe. Ry. v. White*, 548 U.S. 53, 68 (2006) (citing *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.D.C. 2006)). As outlined above, Plaintiff allegedly participated in several ways, namely, for the reasons cited above.

**M. Plaintiff has Pled a *Prima Facie* Case of Violation of the Equal Pay Act.**

"Under the Equal Pay Act, the plaintiff must show that an employer has paid different wages to employees of opposite sexes for equal work in jobs which require equal skill, effort and responsibility and which are performed under similar working conditions." *Brinkley-Obu v. Hughes Training*, 36 F.3d 336, 343 (4th Cir. 1994) (Citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974); *Fowler v. Land Management Groupe, Inc.*, 978 F.2d 158, 161 (4th Cir.

1992)). "The equal work standard does not require that compared jobs be identical, only that they be substantially equal." 29 C.F.R. § 1620.13(a). It does require that Plaintiff establish a prima facie case of discrimination.

In the case at bar, Plaintiff has identified Eugene Morris, Leon Suskin, and Larry Gamble as proper comparators. ECF Doc. No. 1, ¶ 37-38. All three are allegedly male and under Dr. Crowel's supervision. *Id*. Further, Mr. Morris was allegedly also a Manager III while Mr. Suskin was a Supervisory Therapist. *Id*. By virtue of his title, Mr. Morris allegedly possessed a similar position to Plaintiff. ECF Doc. No. 1, ¶ 38. Further, Mr. Suskin allegedly performed similar duties to Plaintiff as well. *Id*. However, Mr. Morris allegedly became employed by Defendant approximately five years after Plaintiff and became a Manager III in 2005. ECF Doc. No. 1, ¶ 38. Yet, he earned approximately $134,000.00 in 2016. *Id*. Further, Larry Gamble was also allegedly a Manager III at all relevant times. ECF Doc. No. 1, ¶ 39. He was allegedly hired by Defendant in February of 2004 as a Manager III and, as of 2016, earned approximately $135,000.00. ECF Doc. No. 1, ¶ 39.  Therefore, even without the benefit of discovery, Plaintiff is still able to identify three male individuals who had less experience than Plaintiff and yet made at least as much or more in income as Plaintiff. Plaintiff has, thus, alleged a *prima facie* case of a violation of the Equal Pay Act.

**N.  Plaintiff's Assertions of Violations of the Equal Pay Act Should not be Limited to Those Violations Occurring on or after September 3, 2017.**

As previously discussed under the continuing violations doctrine, Plaintiff exhausted her administrative remedies as to the violations under the Equal Pay Act. Therefore, because she complained of and exhausted the issues of unequal pay at the administrative phase, Plaintiff's entire claim of unequal pay should survive Defendant's Motion to Dismiss and proceed before this Honorable Court.

## IV.     <u>CONCLUSION</u>

Wherefore, for the reasons set forth above, Plaintiff contends she has demonstrated that her Complaint should not be dismissed. Therefore, this Honorable Court should deny the Defendant's Motion to Dismiss.

Respectfully Submitted,


_____/s/_____
Paul V. Bennett, Esq. (Bar No. 10324)
Bennett & Ellison, P.C.
2086 Generals Highway, Suite 201
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: pbennett@belawpc.com
*Attorney for Plaintiff*

_____/s/_____
Elizabeth A. Marcus-Wenger, Esq. (Bar No. 30123)
Bennett & Ellison, P.C.
2086 Generals Highway, Suite 201
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: emarcuswenger@belawpc.com
*Attorney for Plaintiff*